STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Robert M. SPEESE, Defendant-Appellant.

Supreme Court

*No. 93–0443–CR. Oral argument November 29, 1995.—Decided March 20, 1996.*

(Also reported in 545 N.W.2d 510.)

For the plaintiff-respondent-petitioner the cause was argued by *Marguerite M. Moeller*, assistant attorney general, with whom on the briefs was *Jerome S. Schmidt*, assistant attorney general and *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief and oral argument by *Michael J. Devanie*, LaCrosse.

SHIRLEY S. ABRAHAMSON, J.    This is a review of a published decision of the court of appeals, *State v. Speese*, 191 Wis. 2d 205, 528 N.W.2d 63 (Ct. App. 1995), reversing 13 of the defendant's 22 convictions entered by the circuit court for Monroe County, James W. Rice, judge.[1] Of the 13 convictions reversed, 11 involved counts charging Robert M. Speese, the defendant, with sexual contact and sexual intercourse with his step-daughter's 15-year-old friend Kari, the victim, contrary

---

[1] The court of appeals affirmed the convictions on the other nine counts, and those counts are not before us on review.

to Wis. Stat. § 948.02(2) (1993-94);[2] one count charged the defendant with exposing the victim to harmful material, contrary to Wis. Stat. § 948.11(2); and one count charged the defendant with having sexual contact with the victim, contrary to Wis. Stat. § 940.225(3m).[3]

The court of appeals remanded the cause to the circuit court to determine whether the victim had voluntarily consented to a court-ordered disclosure of her medical and psychiatric records.[4] The court of appeals concluded that a new trial was needed on the sexual assault charges involving the victim regardless of whether she had consented to the release of her medical and psychiatric records. The court of appeals determined that if the victim had consented to the release of her records, a new trial would be necessary on the sexual assault charges because the defendant's lack of access to those records was prejudicial error. The court of appeals further concluded that if the victim had not consented to the release of her records, the circuit court should have ordered her either to consent

[2] All future references are to the 1993-94 volume of the Wisconsin Statutes.

[3] The count charging the defendant with having violated Wis. Stat. § 940.225(3m), which prohibits sexual contact with a person without that person's consent, related to an incident occurring after the victim had turned 16.

[4] The circuit court had ordered the medical and psychiatric records disclosed so that it could conduct an *in camera* review to determine whether they contained exculpatory material that might aid the defendant in preparing his defense. The victim, with the consent of her mother, complied with this order. After reviewing the records, the circuit court concluded that they "had nothing to do with this event" and therefore refused to disclose them to the defendant.

to the defendant's inspection of those records or not to testify at trial. *Speese*, 191 Wis. 2d at 211.

The ultimate issue in this case—whether the convictions should be affirmed or reversed—can be resolved with a harmless error analysis. The court need only ask and answer the following question: Assuming *arguendo* that the circuit court, after an *in camera* review of the victim's medical and psychiatric records, erred in withholding these sealed records from the defendant, was any such error prejudicial? Having carefully reviewed the record and having conducted our own *in camera* review of the victim's sealed medical and psychiatric records, we conclude that any such error was harmless. We therefore reverse the decision of the court of appeals and affirm the convictions on the 13 reversed counts.

I.

For purposes of this review, the facts are not in dispute. The reversed counts all refer to incidents in the defendant's criminal conduct with the victim which occurred between January and March 1991 when the victim, a friend of the defendant's stepdaughter, was at the defendant's residence. In September 1991, the defendant's stepdaughter confided in her mother regarding the defendant's sexual activities with both girls. A 23-count criminal complaint was filed at the end of September 1991.

In a pretrial motion, the defendant sought access to medical and psychiatric records arising from the victim's stay at a mental health facility in February 1991 on the ground that they contained exculpatory information. The defendant reasoned that (1) questions about sexual abuse are routinely posed to an adolescent at a mental health facility; (2) had the victim

revealed any sexual encounters with or abuse by the defendant, the mental health professionals would have been obliged by law to report the abuse;[5] and (3) because allegations of the defendant's abuse did not surface until seven months later, the victim's medical and psychiatric records must demonstrate that the victim had been either silent about any sexual abuse by the defendant or had denied it outright.

The defendant therefore contends that had he been given access to the victim's medical and psychiatric records, he might have been able to impeach her credibility, thereby allowing the jury to infer that the defendant had not engaged in any criminal conduct with the victim.

The State objected to the defendant's motion seeking access to the victim's medical and psychiatric records, contending that these records were privileged. The circuit court nevertheless ordered the State to obtain the victim's records and turn them over to the circuit court. Using a general medical release form signed by the victim and the victim's mother, the State complied, forwarding the medical and psychiatric records it received to the circuit court.[6] Having

[5] Wis. Stat. § 48.981 requires that mental health professionals having reasonable cause to suspect that a child in their care has been abused or neglected must, with limited exceptions, inform the county department or the sheriff or city, village or town police department of the facts and circumstances contributing to the suspicion of abuse.

[6] Because the prosecutor's office time-stamped the records, the court of appeals inferred that it had access to the records. While the prosecutor's role as the conduit to the circuit court provided the State with the opportunity to inspect the victim's psychiatric records, the State insists that it has not done so and that it has "an explanation for those time stamps that [it] has

reviewed the medical and psychiatric records prior to trial, the circuit court concluded that they did not contain anything relevant to the criminal charges against the defendant and therefore refused to permit him to examine them. The circuit court confirmed, however, that the victim had received inpatient psychiatric care during February 1991.

On appeal, the defendant claimed that since the prosecution had been allowed access to the medical and psychiatric records while the defense had not, the circuit court's decision to withhold those records from him had impaired his constitutional right to present a defense. The court of appeals agreed. It concluded that if the information contained in the medical and psychiatric records had been disclosed, there was a reasonable probability that "the result of the trial would have been different . . . ." *Speese*, 191 Wis. 2d at 224.

In an effort to protect the victim from "unnecessary public disclosure of her records," *Speese*, 191 Wis.

---

not been able to present." Brief for Petitioner at 22 n.5. The record does not reveal whether the State examined the medical and psychiatric records which it time-stamped.

In their briefs to this court, both parties suggest that the ambiguity concerning what the State saw might have been avoided had the circuit court subpoenaed the victim's medical and psychiatric records directly under the authority conferred upon it under Wis. Stat. § 885.01. The state refers the court to the *Godec* case in which the court observed that "[u]nder sec. 885.01 a circuit judge has authority to order the production of documents in any action pending before any court." *City of Muskego v. Godec*, 167 Wis. 2d 536, 547, 482 N.W.2d 79 (1992). As we explain below, however, we do not resolve today the question of whether this statutory authority extends to documents protected by the physician-patient privilege in cases such as this one.

2d at 225, the court of appeals explicitly declined to reveal what information in the victim's medical and psychiatric records had provided the basis for its decision. In a prior order, however, the court of appeals had noted that "[t]he records . . . do not disclose whether [the victim] told the hospital staff about the alleged sexual contacts or intercourse with the defendant or whether she denied such contacts or intercourse."[7] And in its published opinion, the court of appeals noted that "[w]ithout an explanation for her silence, a jury might disbelieve [the victim's] testimony." *Speese*, 191 Wis. 2d at 224.

Apparently, then, the court of appeals' conclusion that the defendant's lack of access to the victim's medical and psychiatric records was prejudicial is based on its reasoning that the jury could not fairly determine the defendant's guilt or innocence without knowing that the victim had failed to report the defendant's alleged abuse, even though her hospitalization took place when that abuse was allegedly at its height. We say "apparently" because our own *in camera* review of the records reveals no other basis for the court of appeals' conclusion. Moreover, the defendant himself could not recount any other reason why his access to the victim's medical and psychiatric records might have been exculpatory and could not, even under intensive questioning at oral argument, develop any other scenario persuading us that he might need access to

---

[7] The court of appeals' order, issued after trial but before an appeal had been filed, denied the defendant's request to review the victim's medical and psychiatric records while preparing his appellate brief. In issuing its order, the court of appeals explicitly reserved judgment on the merits of the defendant's contention that he should have been given access to the records until the defendant's appeal was properly before it.

the victim's records. Consequently, we will next address the question of whether it was prejudicial to the defendant to deny him access to information in the victim's medical and psychiatric records indicating that she did not reveal that she had been sexually abused.

## II.

While we acknowledge that a victim's failure to report alleged incidents of sexual abuse to hospital personnel has the potential to discredit the victim's testimony, in this case the jury was well aware, even without this evidence, that the victim had repeatedly returned to the defendant's residence despite the ongoing assaults and had not, for a substantial time, told her parents about the defendant's criminal conduct. The victim had told only the defendant's stepdaughter and a classmate about the alleged abuse.

At trial, the defendant demonstrated that the victim had remained silent about the defendant's criminal conduct both while it was happening and for a prolonged period thereafter. An officer of the Tomah police department and a Monroe County social worker—both of whom interviewed the victim when the abuse was initially reported in September 1991—testified on cross examination that according to the victim the last alleged act of abuse had taken place months earlier. The defendant's stepdaughter testified that initially she and the victim did not even reveal to each other their respective sexual encounters with the defendant.

The victim herself testified that she had not disclosed the abuse to either her mother or her father, even though her mother had asked her pointedly why she was increasingly reluctant to spend time at the defendant's residence and even though her father was

a law enforcement officer. The victim testified that she had repeatedly returned to the defendant's residence without being forced to do so. She also admitted that during February 1991—as the abuse was taking place—she had been questioned directly regarding whether she was being abused and had answered "no" because she feared that the defendant would physically harm her or kill himself, as he had threatened to do.[8]

Hence evidence in the victim's medical and psychiatric records of her silence regarding the defendant's sexual abuse would have been redundant. Evidence demonstrating that the victim remained silent about the defendant's alleged abuse both while it was taking place and for a prolonged period thereafter was properly before the jury. When the probative value of evidence, including relevant evidence, is needlessly duplicative and cumulative in character, the circuit court need not admit it. Wis. Stat. § 904.03; *State v. Flattum*, 122 Wis. 2d 282, 306, 361 N.W.2d 705 (1985); *State v. Morgan*, 195 Wis. 2d 388, 412, 536 N.W.2d 425 (Ct. App. 1995). Having considered all of the evidence relating to the victim's silence which was properly

[8] The victim testified that she had personally been a witness to incidents in which the defendant physically abused his stepdaughter. Both the victim and the stepdaughter also testified that they were afraid the defendant would harm them if they did not comply with his demands. The victim testified that she was "scared" that the defendant might "try to come after us and hurt us or kill himself like he said he was going to do." The defendant's stepdaughter testified that she "was afraid of [the defendant] because he beat me. He hit me a lot. And he put the fear of God in me that if I did something wrong that I was going to be beat again. I was always scared he was going to beat me. Always."

before the jury, we conclude that any further evidence of that silence which the defendant might have gleaned from the victim's medical and psychiatric records was cumulative and within the court's discretion to exclude.

Furthermore, evidence introduced at trial suggesting that the defendant committed the alleged acts of abuse was compelling. In addition to the victim's testimony regarding the defendant's numerous sexual assaults, testimony by the defendant's stepdaughter and one of the victim's classmates corroborated the victim's account of the sexual incidents. The defendant's stepdaughter testified that the defendant had admitted the alleged sexual abuse against the victim to her. The victim's classmate testified that the victim had told him about the defendant's sexual abuse early in 1991, while it was still ongoing.

On the basis of this testimony and in consideration of the ample evidence before the jury of the victim's silence regarding the alleged abuse, we conclude that the defendant's lack of access to the victim's medical and psychiatric reports did not affect the outcome of the trial. Applying this court's longstanding harmless error analysis, we conclude that, even assuming *arguendo* that the circuit court erred in denying the defendant access to the victim's medical and psychiatric records, there is no "reasonable possibility that the error contributed to the conviction." *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). We therefore reverse the decision of the court of appeals and affirm the defendant's convictions.

III.

When we granted the petition for review in this case, it appeared to present a number of important

606

issues regarding the scope of the physician-patient privilege and its relation to an accused's right to place before the jury evidence that might influence the determination of guilt. Having reviewed both the record and the briefs, however, we conclude that these issues either are not presented or are not fully briefed. While we set these issues forth to alert circuit courts and counsel about some of the problems they raise, the resolution of these issues awaits other cases squarely posing them.

First, as the State's brief points out, this case raises the issue of who can assert and waive the physician-patient privilege, Wis. Stat. § 905.04(2), when the patient whose medical records are sought is a minor. A parent will ordinarily be the individual best situated to authorize the exercise or waiver of a minor's privileges relating to those records. But in those circumstances in which the perpetrator of sexual abuse is either a family member or closely aligned with the family, the interests of a minor alleging abuse and of that minor's parents can diverge, leaving the child's best interests unprotected.

Similarly, because the State's interest in gathering evidence necessary for a successful prosecution will not always coincide with a minor's privacy interests, the prosecutor's office is also poorly positioned to guard a minor's best interests. The State itself made this point both in its brief and during oral argument before the court. The State is not a minor's attorney; it cannot assert or waive a privilege on a minor's behalf. Nor should it assume the role of counseling a minor regarding that minor's rights and interests.

Under questioning from the court during oral argument, both parties stated that when a minor's interests may not coincide with those of the minor's

parents, the circuit court should appoint a guardian ad litem to represent the minor and assess whether the minor's interests are best represented by waiving or refusing to waive the physician-patient privilege.

Because this issue was raised for the first time in the State's reply brief and because, under the circumstances present in this case, the interests of the victim and the parent signing her release form apparently did coincide, we decline to resolve whether and under what circumstances a circuit court must appoint a guardian ad litem or counsel to assist a minor in making a decision regarding the physician-patient privilege. Instead we merely call this issue to the attention of circuit courts and counsel so that it might be more adequately considered in future cases in which it is raised.[9]

A second, related issue concerns whether the physician-patient privilege is absolute or, alternatively, must yield to an accused's constitutional right to a meaningful opportunity to present a complete defense. The United States Supreme Court addressed this issue in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). Like the case before us, *Ritchie* involved a minor's allegations of sexual abuse. The accused, the minor's father, subpoenaed records kept by the protective service agency investigating the minor's allegation. Stating that they were privileged, the agency refused to release the records. The accused claimed that the agency thereby thwarted his constitutionally protected ability to present a complete defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citing *California v. Trombetta*,

---

[9] Wis. Stat. § 48.23(3m) authorizes a circuit court to appoint counsel or a guardian ad litem for certain children. Neither party cited this statute and its possible relevance to this case either in their briefs to the court or in oral argument before the court.

467 U.S. 479, 485 (1984) (noting that the U.S. Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense")).

A narrowly divided (5-4) Court held that the accused did not have a right of full access to the minor's medical records. But while recognizing "that the public interest in protecting this type of sensitive information is strong," *Ritchie*, 480 U.S. at 57, the Court also stated that "we do not agree that this interest necessarily prevents disclosure in all circumstances." *Id.* Pointing out that the statute under review contained numerous exceptions to the privilege which it conferred—including an exception allowing disclosure to a court of competent jurisdiction pursuant to a court order—the Court held that the accused was entitled to an *in camera* review of the agency records "by the trial court to determine whether they contained information that probably would have changed the outcome of his trial." *Id.* at 58.

In ordering the trial court to conduct an *in camera* review, the Court stated pointedly that "[w]e express no opinion on whether the result in this case would have been different if the statute had protected the [agency] files from disclosure to *anyone*, including law-enforcement and judicial personnel." *Ritchie*, 480 U.S. at 57 n.14. Conversely, the physician-patient privilege codified as Wis. Stat. § 905.04(2) contains no such exception allowing *in camera* review.[10]

---

[10] As the State points out, Wis. Stat. § 905.04(4) codifies numerous exceptions to the Wis. Stat. § 905.04(2) privilege, including an exception covering situations under which a health care provider has a "reasonable ground" for suspecting that a child has suffered "abuse or neglect [which] was other than accidentally caused or inflicted by another." Wis. Stat. § 905.04 (4)(e)2. But Wis. Stat. § 905.04(4) contains no exception compa-

In one part of its briefs the State appears to argue that under Wis. Stat. § 51.30(4) and (6) as well as Wis. Stat. § 905.04 a circuit court has no authority to order the release of privileged medical records. Brief for Petitioner at 26. In contrast, in other parts of its briefs the State asserts, adopting the defendant's position, that Wis. Stat. § 885.01(1) authorizes a circuit court to subpoena records which may be considered privileged. Reply Brief for Petitioner at 5; Brief for Respondent at 15. This court has not had occasion to consider whether Wisconsin's physician-patient privilege precludes discovery or court review of medical and psychiatric records[11] or how *Ritchie* might alter the scope of that privilege.[12]

---

rable to the exception in the statute at issue in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), allowing disclosure to a court of competent jurisdiction pursuant to court order.

[11] Courts in other states are divided concerning whether the physician-patient privilege is absolute or, alternatively, must yield when a defendant's right to present a complete and effective defense is jeopardized. For citation to and analysis of these cases, see *Goldsmith v. Maryland*, 651 A.2d 866, 874-77, 884-87 (Md. 1995). *See also Jaffee v. Redmond*, 51 F.3d 1346 (7th Cir. 1995), *cert. granted*, 64 U.S.L.W. 3258 (Oct. 16, 1995) (No. 95-266) (police officer's confidential communications with licensed social worker are protected from compelled disclosure under psychotherapist-patient privilege).

[12] The State argues that the court of appeals' decision in *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), represents an unwarranted extension of the principles enunciated in *Ritchie* and therefore urges the court to overturn *Shiffra*. In *Shiffra*, a sexual assault case, the accused sought his accuser's psychiatric and mental health treatment records. The State opposed the motion, claiming that the records were absolutely privileged under Wis. Stat. § 905.04(2), which provides a privilege for "confidential communications . . . or information

Nor does this case present the opportunity to do so. The record leaves unclear whether the victim actually waived her privilege and whether the victim's medical and psychiatric records were examined by the State. Furthermore, as the State acknowledges in its brief, this case is distinguishable from both *Ritchie* and *State v. Shiffra*, 175 Wis. 2d 600, 449 N.W.2d 719 (Ct. App. 1993), because the circuit court has already conducted an *in camera* inspection of the victim's medical and psychiatric records. Consequently, the parties' attention was less focused on resolving whether the privilege is absolute than on arguing the merits of the circuit court's and court of appeals' respective conclusions about the relevancy of the evidence to the case. As we have already determined, even assuming *arguendo* that portions of the victim's medical and psychiatric records should have been disclosed, the circuit court's failure to disclose them is not prejudicial error.

obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition." The *Shiffra* court of appeals, much like the court of appeals in this case, held that in order to protect an accused's right to present a defense, the accuser must either waive the privilege and allow the circuit court to conduct an *in camera* inspection of her records or be barred from testifying at trial.

The State insists that *Shiffra* was incorrect in extending *Ritchie* to evidence that was not in the government's possession. The records sought by the accused in *Ritchie* were government agency records, and the *Ritchie* court noted that "[i]t is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Ritchie*, 480 U.S. at 57. Conversely, the records at issue in *Shiffra* were not in the possession of the government. In this case it is unclear whether the prosecution ever examined the medical and psychiatric records which passed through its office.

611

A third issue raised by both parties at oral argument but not fully posed by this case concerns at what point in the litigation process the privilege must yield, assuming *arguendo* that the patient's privilege is not absolute. Specifically, the parties contest whether these competing interests should be balanced differently when assessed before as opposed to during trial.[13]

The defendant, relying on *Shiffra*, contends that an accused making a pretrial discovery request for privileged medical and psychiatric records need only "make a preliminary showing that the sought-after evidence is relevant and may be helpful to the defense or is necessary to a fair determination of guilt or innocence." *Shiffra*, 175 Wis. 2d at 608.

The State contends that because the threshold established in *Shiffra* is too easy for an accused to meet, it encourages fishing expeditions into privileged medical records. The State argues that denying an accused access to privileged medical records before trial does not violate the right to present a complete defense. Instead, the State urges that an accused desir-

---

[13] This issue divided the *Ritchie* court. Justice Blackmun, who had provided the fifth vote in favor of the Court's holding, did not join that portion of Justice Powell's opinion specifically addressed to the question of pretrial discovery. Writing for a plurality, Justice Powell held that the Confrontation Clause "is a *trial* right" and "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Ritchie*, 480 U.S. at 52, 53. Writing separately, Justice Blackmun observed that "there might well be a confrontation violation if, as here, a defendant is denied pretrial access to information that would make possible effective cross-examination of a crucial prosecution witness." *Ritchie*, 480 U.S. at 61-62 (Blackmun, J., concurring in part and concurring in the judgment).

ing access to privileged records should request the court to subpoena them at trial, at which point it has become clearer whether the person holding the privilege will testify and what that testimony will involve. The State argues further that only at trial can the accused fully demonstrate a connection between the records sought, the issue before the court, and the likelihood that information relevant to the trial would exist in the sought-after records.

As we explained previously, we do not reach the question of whether the physician-patient privilege must yield to an accused's right to present a complete defense. Thus, even assuming *arguendo* that occasions exist when the privilege must yield, we decline to address the question of whether the balancing between the privilege and an accused's right to present a complete defense should be done differently before and during trial because that question is not fully posed by this case.

Finally, assuming *arguendo* that the privilege is absolute, a fourth issue raised in this case concerns whether the sanction of witness preclusion represents an appropriate sanction when the holder of the privilege refuses to waive the privilege and allow an *in camera* inspection. The State argues that such a sanction violates public policy by penalizing the State for a matter not within its control, removing the prosecutor's discretion concerning whether to proceed with a case, and discouraging the reporting of sexual abuse by victims who are concerned about their privacy. The defendant does not take up the merits of this argument, but rather urges the court not to address it since an *in camera* review was conducted by the circuit court in this case. Because this issue is not posed in the case and was not fully briefed, we do not decide it.

To sum up, this case highlights problems regarding (1) whether the circuit courts should appoint counsel or guardians ad litem to assist minors in sexual abuse cases in determining whether to assert or waive the physician-patient privilege; (2) whether the physician-patient privilege is absolute or must be balanced with a accused's right to present a complete defense; (3) whether any such balancing should be treated differently prior to and during trial; and (4) whether a person's refusal to waive the privilege should preclude that person from testifying at trial. While these questions are raised in this case, they are, by the parties' own admission, neither fully at issue nor fully briefed. Hence we decline to reach them. We hold instead that even if the circuit court erred in denying the defendant access to the victim's medical and psychiatric records, any such error was harmless in this case. We therefore reverse the decision of the court of appeals and remand the cause to the circuit court with instructions to reinstate the judgment.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court with instructions.