**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 15, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1747-CR**

Cir. Ct. No. 2018CF1563

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

KEVIN D. WELTON,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and orders of the circuit court for Dane County: SUSAN M. CRAWFORD, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Taylor.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kevin Welton, by counsel, appeals a judgment convicting him, after a jury trial, of multiple counts of sexual assault of a child.

Welton also appeals circuit court orders denying his motion for postconviction discovery and his motion for a new trial based on his allegation that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963). We reject Welton's arguments and affirm the judgment and orders of the circuit court.

## *Background*

¶2    A jury convicted Welton of one count of first-degree sexual assault of a child and one count of attempted first-degree sexual assault of the same child, as well as one count of first-degree sexual assault of a different child. One of the victims is the child of A.B. who, at the time of Welton's trial, was a pediatric physician with a specialty in child abuse and was employed by the University of Wisconsin School of Medicine and Public Health, which the parties refer to in their appellate briefs as UW Health Systems.[1] A.B. testified at Welton's jury trial in October 2019 as a lay witness, in her role as the mother of one of the victims.

¶3    Following his conviction, Welton filed a motion seeking postconviction discovery of materials related to a workplace investigation of A.B. that was conducted by her then employer, UW Health Systems. Welton simultaneously filed a motion for a new trial, arguing that the State committed a *Brady* violation by not disclosing the materials referenced in his motion for postconviction discovery prior to his trial. Welton alleged that those materials would have shown that A.B. had a "penchant for seeing abuse where others did not and bullying her colleagues to accept her viewpoint." The circuit court held

---

[1] Consistent with the policy of protecting victim privacy under WIS. STAT. RULE 809.86(4) (2021-22), we use the initials "A.B." that do not correspond to the witness's actual name. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

hearings on the motions and, following the hearings, denied both motions in an order entered in September 2021. Welton filed a motion for reconsideration, which the circuit court also denied. Welton appeals.

## *Discussion*

### I. Motion for postconviction discovery

¶4 Welton argues that the circuit court erred in denying his motion for postconviction discovery. In his motion, Welton sought four categories of materials: (1) materials related to the investigation conducted by A.B.'s then employer, UW Health Systems, of her workplace behavior, including allegations of retaliation against or intimidation of colleagues; (2) any material regarding inaccurate testimony provided by A.B. in other child abuse cases; (3) "[a]ny material regarding [A.B.] causing others to provide inaccurate testimony, reports, or opinions in other child abuse cases"; and (4) any materials having to do with the interaction between A.B. and a former colleague, which the former colleague testified about in a separate Dane County criminal case. In his appellant's brief, Welton refers to the sought-after discovery materials collectively, stating that the "appeal is, at its heart, about whether the postconviction court should have ordered the State to turn over records regarding UW Health's investigation into [A.B]." Welton argues that this court should remand the case to the circuit court with directions to grant his request for postconviction discovery. For the reasons discussed below, we reject Welton's argument.

¶5 A defendant in a criminal case is not entitled to discovery beyond that which a prosecutor is statutorily and constitutionally required to disclose. ***State v. Harris***, 2004 WI 64, ¶16, 272 Wis. 2d 80, 680 N.W.2d 737. Unlike pretrial discovery, which is governed by WIS. STAT. § 971.23(1), there is no

statutory right to postconviction discovery in a criminal proceeding. The Wisconsin Supreme Court has recognized a limited right to postconviction discovery rooted in a defendant's due process right to present a complete defense. *State v. O'Brien*, 223 Wis. 2d 303, 320-21, 588 N.W.2d 8 (1999). "[A] defendant has a right to post[]conviction discovery when the sought-after evidence is relevant to an issue of consequence." *Id.* at 321. Evidence is material, or consequential, only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 320-21. "Reasonable probability" is defined as a probability sufficient to undermine our confidence in the outcome of the proceedings. *Id.* at 321. The party seeking postconviction discovery has the burden of meeting this standard. *Id.* at 320.

¶6      Whether to a grant a motion for postconviction discovery is a matter committed to the discretion of the circuit court. *State v. Kletzien*, 2008 WI App 182, ¶8, 314 Wis. 2d 750, 762 N.W.2d 788. "We will uphold a [circuit] court's denial of postconviction discovery absent an erroneous exercise of discretion." *State v. Ziebart*, 2003 WI App 258, ¶32, 268 Wis. 2d 468, 673 N.W.2d 369. A circuit court properly exercises its discretion when it has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process. *State v. Bentley*, 201 Wis. 2d 303, 318, 548 N.W.2d 50 (1996).

¶7      Here, the circuit court reviewed Welton's motion for postconviction discovery and the State's response and heard arguments from the parties' attorneys at hearings held over two separate days. The court determined that Welton had not met the burden for obtaining postconviction discovery, stating: "There is simply not a sufficient showing by the defense to warrant the action that you are seeking from the Court today, which is to order some discovery related to [A.B.'s]

4

… records held by the University of Wisconsin Hospital and Clinics. I'm denying that request."

¶8      The circuit court's denial of Welton's motion for postconviction discovery is grounded in the relevant facts. The sole attachment to Welton's motion was a letter dated July 5, 2019, from A.B.'s department at UW Health Systems, informing A.B. that she was being placed on administrative leave with pay due to concerns about workplace behavior. In a supplemental motion, Welton also referenced several digital press articles that he argued could "prove up his claim" that A.B. "is a deceitful bully with a long and well-documented history of pressuring colleagues into making unfounded child abuse accusations." The circuit court concluded that none of Welton's submissions included "any direct evidence of [A.B.] doing such a thing" and remarked that Welton was "asking the Court to engage in quite a bit of speculation[.]" The court stated that the type of allegations against A.B. that were contained in the press reports "would be more problematic in a case in which [A.B.] was a treating physician for a child victim, particularly in shaken baby cases which is what the press reports have focused on." In contrast, the court noted the fact that A.B. had testified at Welton's trial not as an expert in an infant abuse case, but in a civilian capacity, as the mother of an older child who had made allegations against Welton of sexual assault and attempted sexual assault. The court stated that "it is pretty far afield from the evidence that was relevant to [Welton's] case to have a mini trial into allegations of [A.B.'s] behavior in the middle of that criminal trial." The court determined that the postconviction discovery that Welton was seeking was not material, even if it substantiated Welton's assertions.

¶9      We are satisfied that the record shows a rational decision-making process on the part of the circuit court, involving the consideration of the relevant

facts. *See id.* The circuit court also referenced and applied the applicable legal standard. *See id.* The court stated that the "defense has to show materiality, the reasonable probability of a different outcome" when seeking postconviction discovery. *See O'Brien*, 223 Wis. 2d at 321-23. The court ultimately found that "there is not a reasonable probability of a different outcome demonstrated by the defense here." Because the record shows that the circuit court examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process, *see Bentley*, 201 Wis. 2d at 318, we conclude that the court properly exercised its discretion in denying Welton's request for postconviction discovery.

## II. Motion for a new trial based on an alleged *Brady* violation

¶10 We next address Welton's argument that he is entitled to a new trial because the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not "turning over" prior to trial the "[A.B.] evidence," which Welton indicates refers to records from UW Health Systems pertaining to its workplace investigation of A.B. For ease of reference, we will refer to those records as A.B.'s workplace records.

¶11 Under the Fourteenth Amendment of the United States Constitution, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. A defendant therefore has "a due process right to any favorable evidence 'material either to guilt or to punishment' that is in the State's possession…, including any evidence which may impeach one of the State's witnesses." *State v. Wayerski*, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468. Whether a due process violation has occurred contrary to *Brady* is an issue

6

that we review independently, but we accept the circuit court's findings of fact unless clearly erroneous. *See id.*

¶12    The defendant has the burden of demonstrating a due process violation under **Brady**. *See Harris*, 272 Wis. 2d 80, ¶13. To satisfy the burden, a defendant must prove all three components: "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material." *Wayerski*, 385 Wis. 2d 344, ¶35. A defendant's failure to prove any of these components results in the **Brady** claim failing. *Id.*, ¶62.

¶13    Because Welton fails to prove that the State suppressed the evidence he seeks under the second **Brady** component, and this conclusion is dispositive to our analysis, we reject Welton's argument that a **Brady** violation occurred and that he is entitled to a new trial.

¶14    As noted, the second **Brady** component requires a defendant to prove that the evidence in question was suppressed by the State. **Brady** evidence is considered to be suppressed if it is in the State's possession and not turned over to the defense. *Id.*, ¶35. "[I]f the documents are not in the government's possession, there can be no 'state action' and consequently, no violation of [the] Fourteenth Amendment." *State v. Lynch*, 2016 WI 66, ¶53, 371 Wis. 2d 1, 885 N.W.2d 89 (quoting *United States v. Hach*, 162 F.3d 937, 947 (7th Cir. 1998)). Welton argues that the State violated **Brady** because at least three State entities possessed information about A.B.'s workplace records: UW Health Systems, the Madison Police Department (MPD), and the Dane County District Attorney's Office. For the reasons set forth below, we reject this argument.

7

¶15    First, Welton's argument that the State possessed A.B.'s workplace records appears to be based on the false premise that, because UW Health Systems and the Dane County District Attorney's Office are state entities, the Dane County District Attorney's office had access to the files of the UW Health Systems. Welton provides no legal support for this assertion. Although the governing body of the UW Health Systems, the University of Wisconsin Hospitals and Clinics Authority, was created by the State legislature, *see* WIS. STAT. § 233.02, it does not follow that either health care entity is considered "the State" within the context of criminal law. In other words, UW Health Systems' possession of A.B.'s workplace records does not equate to the State possessing these records for a criminal prosecution. The State is only charged "with knowledge of material and information in the possession or control of others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to the prosecutor's office." ***State v. DeLao***, 2002 WI 49, ¶24, 252 Wis. 2d 289, 643 N.W.2d 480 (citation omitted). Welton makes no argument that UW Health Systems participated in the investigation or evaluation of his case or that it regularly reports to the Dane County D.A.'s office.

¶16    Further, there are statutory barriers that prevented the State from "possessing" A.B.'s workplace records. UW Health Systems is prohibited from disclosing

> [i]nformation relating to one or more specific employees that is used … by the employer … for staff management planning, including performance evaluations, judgments, or recommendations concerning future salary adjustments or other wage treatments, management bonus plans, promotions, job assignments, letters of reference, or other comments or ratings relating to employees.

WIS. STAT. § 19.36(10)(d). Pursuant to WIS. STAT. § 233.13(2), UW Health Systems "may keep records of ... [d]ismissals, demotions and other disciplinary actions" closed to the public. Welton makes no argument that the State had an ability to access, and therefore, possess, these records. His argument fails on this ground as well.

¶17 Welton also argues that the MPD had access to A.B.'s workplace records because it allegedly possessed a police report that pertained to a different case. However, the only support Welton offers for this argument is not a copy of the police report, but rather a letter from the office of the State Public Defender (SPD) to UW Health Systems dated September 13, 2019, a copy of which was included in the appendix to Welton's motion for reconsideration of the circuit court's September 2021 order. The SPD letter references, without any specific details, a police report in an unnamed matter that allegedly "documents that [A.B.] was instrumental in having a medical record changed so that the medical record … would support [A.B.'s] theory of abuse."

¶18 Even if we assume that the police report referenced in the SPD letter existed, it is a stretch to assume that the prosecution in Welton's case had knowledge of the report's existence or its contents, or had any obligation to discover the same. While the prosecution "has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), "*Brady* does not require the government to gather information or conduct an investigation on the defendant's behalf." *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002). A prosecutor's duty to obtain information from investigative agencies is not limitless. *DeLao*, 252 Wis. 2d 289, ¶24. Welton does not argue that the detective who wrote the unspecified police report had any participation in the investigation

or evaluation of Welton's criminal case, as required under **DeLao**, in order to charge the prosecution with knowledge of material and information in the possession or control of others. **Id.** Simply put, Welton fails to persuade the court that the State possessed, for **Brady** purposes, the unspecified police report referred to in the MPD letter.

¶19 Finally, Welton appears to argue that, because the Dane County District Attorney's office knew that A.B. was being investigated by UW Health Systems for possible workplace infractions, it had an obligation to pursue documents related to this investigation and turn them over to Welton. In support of this claim, Welton points to a letter the State sent to two defense attorneys in a different case approximately two months before Welton's trial, disclosing that UW Health Systems was conducting an investigation of A.B. The letter stated:

> My understanding is that the university is investigating concerns that [A.B.] does not timely complete work and also complaints about her behavior with internal and external colleagues, but nothing that would rise to the level of criminal or harassing behavior.… I have asked [University of Wisconsin-Madison's Office of Legal Affairs and the Department of Pediatrics] to alert me if they become aware of any issues related to dishonesty or incorrect medical diagnoses.

Sometime prior to Welton's trial, the prosecuting attorney in Welton's case provided this letter to Welton's trial attorney.

¶20 Based on the above, Welton argues that the prosecution's knowledge that A.B. was under investigation by UW Health Systems at the time of Welton's trial should have resulted in the State obtaining A.B.'s workplace records. Specifically, Welton argues that the State should have known that A.B.'s workplace records were "ripe with evidence that would go to her credibility, and would show" that A.B. was a "deceitful bully, who pressured colleagues into

making unfounded child [abuse] accusations." We construe this argument as asserting that the State had a constitutional duty to obtain and disclose A.B.'s workplace records and its failure to do so violated *Brady*. We reject this argument for several reasons.

¶21 First, as already discussed, Welton fails to demonstrate that the State "possessed" these records. Nothing in the letter from the Dane County District Attorney's office suggests that the District Attorney's office or any individual prosecutor had access to or possession of A.B.'s workplace records.

¶22 Second, Welton fails to legally support his assertion that, because the State was aware of UW Health System's investigation into A.B.'s workplace conduct, it had a legal duty to take efforts to determine whether A.B.'s workplace records contained material, exculpatory, or impeaching evidence. Unlike civil proceedings in which "parties may seek to impose upon opponents the duty of determining whether certain records exist, the criminal discovery provisions do not impose upon the State an obligation to conduct this type of discovery for the defense." *State v. Behnke*, 203 Wis. 2d 43, 51, 553 N.W.2d 265 (Ct. App. 1996) *overruled on other grounds by State v. Johnson*, 2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d 174. As discussed above, UW Health Systems was not involved in the investigation or evaluation of Welton's case, nor does it regularly report to the prosecutor's office, which is needed to trigger a duty under *Brady*. *DeLao*, 252 Wis. 2d 289, ¶24. Welton has therefore not established that the State had a duty to investigate whether exculpatory or impeaching evidence existed in A.B.'s workplace records.

11

¶23    In short, because Welton has failed to establish that the State suppressed the evidence that Welton seeks, he fails to establish that a ***Brady*** violation occurred.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.