¶ 183.
ANNETTE KINGSLAND ZIEGLER, J.
(dissenting). This case presents the court with a thorny issue: how must a circuit court proceed when a *94 criminal defendant contends there exists exculpatory evidence in the hands of a private party, the evidence consists of statutorily-privileged medical records, and the alleged victim and subject of the medical records refuses to waive her privilege as to the evidence at issue?
¶ 184. More concretely: defendant Patrick Lynch ("Lynch") faces charges that he sexually assaulted the complainant in the 1990s. State v. Lynch, 2015 WI App 2, ¶ 2, 359 Wis. 2d 482, 859 N.W.2d 125. Lynch filed a motion requesting that the circuit court[1] review in camera the complainant's medical treatment records dating back to the time of the alleged abuse. Id., ¶ 5. According to the court of appeals below, he "submitted a detailed offer of proof in support of his motion . . . offering] factual assertions and documents to support his theory that [the complainant's] treatment records contain probative, noncumulative evidence bearing on the reliability of [the complainant's] allegations against Lynch." Id., ¶ 11. Upon review, the circuit court concluded that there was "a reasonable likelihood that [the complainant's] treatment records contained probative, noncumulative evidence helpful to Lynch's defense." Id., ¶ 5. Specifically, the court determined
that there was a reasonable likelihood that [the complainant's] records contain information highly damaging to [the complainant's] credibility because there is a reasonable likelihood that the records [would] reveal
(1) that [the complainant] exhibits ongoing symptoms associated with [Post-Traumatic Stress Disorder] that affect her ability to recall and describe pertinent events, and
*95 (2) that [the complainant] failed to report Lynch to treatment providers, at least as a child.
Id,., ¶ 13. The complainant refused, as was her statutory prerogative, to provide the circuit court with access to her privileged treatment records. Id., ¶ 6. At this point, it would seem to an onlooker, the parties were at an impasse.
¶ 185. Such a state of affairs presents courts with the complicated task of ensuring the administration of justice considering all of the interests involved. Lynch, for example — presumed innocent until proven guilty by the State, State v. Johnson, 11 Wis. 2d 130, 144, 104 N.W.2d 379 (Dieterich, J., dissenting) — faces the possibility of being convicted as a sex offender who may, among other things, serve decades in prison, and he has a constitutional right to due process of law. See U.S. Const, amend. XIV. Conversely, the State has, among other things, an interest in pursuing its prosecution and protecting the public from criminals, yet must comply with the statutory and other rights and privileges established for the benefit of victims of crime. The complainant, however, could have, among other things, an interest in maintaining the privacy of sought-after medical records. How to manage the conflicting rights and interests of all concerned?
¶ 186. Fortunately, this is not the first time the Wisconsin judiciary has grappled with this problem. For over two decades, its solution could be found in State v. Shiffra, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), modified, State v. Green, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298. As will be explained in detail below, Shiffra has set forth a framework which considers the interests of all involved, carefully balanc *96 ing the various demands in an attempt to achieve substantial justice in a manner that upholds both the federal constitution and the laws of our state. Put differently, the Shiffra solution "attempt[s] to strike a balance between the witness's right to privacy, which is embodied in the health care provider privileges, and the truth-seeking function of our courts, which is rooted in the Due Process Clause of the Fourteenth Amendment." State v. Behnke, 203 Wis. 2d 43, 56, 553 N.W.2d 265 (Ct. App. 1996) (citation omitted). Shiffra is indeed longstanding precedent.
¶ 187. About ten years after Shiffra, in Green, we examined and refined the Shiffra framework. In Green we described the nature of the preliminary showing that a criminal defendant must make in order to obtain in camera review of a privilege-holder's privileged records:
[A] defendant [must] set forth, in good faith, a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and... not merely cumulative to other evidence available to the defendant. . . . [information will be "necessary to a determination of guilt or innocence" if it "tends to create a reasonable doubt that might not otherwise exist."
Green, 253 Wis. 2d 356, ¶ 34 (citation omitted). To date, Shiffra and Green remain the settled law in Wisconsin on the approach taken by courts and litigants when criminal defendants wish to obtain access to privately-held, privileged medical records.
¶ 188. The circuit court below dutifully worked through the Shiffra-Green framework and applied the traditional sanction which included two results: (1) the court did not violate the complainant's privilege by *97 reviewing her privileged records; and (2) the court issued an order excluding the complainant's testimony at trial. Lynch, 359 Wis. 2d 482, ¶¶ 6, 45-46. The court of appeals below confirmed that the circuit court had correctly applied applicable precedent. See id., ¶ 1. The State now appeals, directing the brunt of its arguments, not against the reasoning of the circuit court or the court of appeals, but against the soundness of Shiffra and Green.
¶ 189. Some background is appropriate. Over the years, the State has made it clear that it disagrees with the Shiffra-Green line of cases. Time after time, the State has attempted to convince this court to overturn Shiffra; it has also voiced its displeasure with that case in the court of appeals. See, e.g., State v. Speese, 199 Wis. 2d 597, 610 n.12, 545 N.W.2d 510 (1996) ("The State . . . urges the court to overturn Shiffra."); Behnke, 203 Wis. 2d at 55 (discussing "the State's complaint in its brief that it does not like Shiffra"); Green, 253 Wis. 2d 356, ¶ 21 n.4 ("The State contends that the holding in [Shiffra] was in error . . . ."); State v. Johnson, 2013 WI 59, 348 Wis. 2d 450, 832 N.W.2d 609 (per curiam), reconsideration granted, 2014 WI 6, 353 Wis. 2d 119, 846 N.W.2d 1 (per curiam) (examining, at State's request, whether Shif-fra should be overruled).
¶ 190. For its part, the court of appeals has attempted to alleviate the State's concerns by explaining that the State "misconstrues the reasoning of. . . Shiffra." Behnke, 203 Wis. 2d at 55. And for our part, we have expressly declined to overturn Shiffra, noting that we have recognized its validity in past cases. Green, 253 Wis. 2d 356, ¶ 21 n.4 (citing State v.
*98 Solberg, 211 Wis. 2d 372, 386-87, 564 N.W.2d 775 (1997); State v. Rizzo, 2002 WI 20, ¶ 53, 250 Wis. 2d 407, 640 N.W.2d 93)).
¶ 191. Johnson, decided a few years ago, represents the State's most recent attempt in its campaign against Shiffra; the State was again unsuccessful. See Johnson, 353 Wis. 2d 119, ¶ 3 (per curiam) ("[W]e do not herein overturn or modify any precedent."). Unbowed and apparently embracing the legal maxim fiat justitia ruat caelum,[2] the State again argues that Shiffra should be overruled. The State again fails to convince this court to adopt its proposed course of action.
¶ 192. The Shiffra-Green line of cases, while not perfect, has provided a reasoned and reasonable approach to these difficult questions. Under principles of stare decisis, I would not overthrow these well-established cases without "special justification," Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶ 94, 264 Wis. 2d 60, 665 N.W.2d 257 (citation omitted), and none has yet been provided. Unfortunately, some of my colleagues do not agree; I therefore write separately.
¶ 193. I conclude that this court should not abandon the Shiffra-Green framework and would therefore affirm the decision of the court of appeals.
I. THE SHIFFRA-GREEN FRAMEWORK
¶ 194. Under Wis. Stat. § 905.04(2), "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated *99 for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient" and certain specified individuals, such as the patient's physician or counselor. Wis. Stat. § 905.04(2).
¶ 195. When, as here, a defendant wishes to obtain access to privileged, privately-held counseling records, the Shiffra-Green framework requires that he "undertake a reasonable investigation into the victim's background and counseling through other means first before the records will be made available." Green, 253 Wis. 2d 356, ¶ 33. Thus "[a] motion for seeking discovery for such privileged documents should be the last step in a defendant's pretrial discovery." Id., ¶ 35. When requesting access to privileged records, the defendant must make "a fact-specific evidentiary showing, describing as precisely as possible the information sought from the records and how it is relevant to and supports his or her particular defense." Id., ¶ 33. More specifically, the defendant must "set forth, in good faith, a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and. . . not merely cumulative to other evidence available to the defendant." Id., ¶ 34. Evidence "necessary to a determination of guilt or innocence" is evidence that "tends to create a reasonable doubt that might not otherwise exist." Id. (citation omitted). This is not by any means intended to be a trivial burden; "mere speculation or conjecture" is insufficient. See id., ¶ 33. Additionally, "[a] good faith request will often require support through motion and affidavit from the defendant." Id., ¶ 35.
¶ 196. If the circuit court determines that the defendant has met his burden, it reviews the records at issue in camera, unless the privilege-holder — in cases *100 such as this one, also the alleged victim — refuses to authorize review. See Shiffra, 175 Wis. 2d at 612; Lynch, 359 Wis. 2d 482, ¶¶ 5-6. "If the victim does not consent, there is no in camera review and the victim is barred from testifying." Johnson v. Rogers Mem'l Hosp., Inc., 2005 WI 114, ¶ 73, 283 Wis. 2d 384, 700 N.W.2d 27 (plurality opinion) (citing Shiffra, 175 Wis. 2d at 612). If the alleged victim does consent, however, the court reviews the records in camera to ascertain whether they contain "any relevant information that is "material" to the defense of the accused." Solberg, 211 Wis. 2d at 386 (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 58 (1987)). The standard applied by the court during its in camera review is even more demanding than the initial burden that must be met by the defendant to obtain that review. See Green, 253 Wis. 2d 356, ¶ 31.
¶ 197. If the records at issue do not contain information meeting the standard just described, no information is released to the defendant. Solberg, 211 Wis. 2d at 387. If the records do contain relevant information material to the defense of the accused, the information is disclosed to the defendant, unless the alleged victim refuses to authorize disclosure. Id. at 386-87.[3]
¶ 198. The Shiffra-Green framework, which "giv[es] the defendant an opportunity to have the circuit court conduct an [in camera] review of the *101 privileged records, while still allowing the patient to preclude that review, addresses both the interests of the defendant and the patient." Id. at 387 (citation omitted). "Under the due process clause, criminal defendants must be given a meaningful opportunity to present a complete defense." Shiffra, 175 Wis. 2d at 605 (citation omitted). On the other hand, "[t]he public policy underpinning the [Wis. Stat. § 905.04] privilege is to encourage patients to freely and candidly discuss medical concerns with their physicians by ensuring that those concerns will not unnecessarily be disclosed to a third person." Solberg, 211 Wis. 2d at 387 (quoting Steinberg v. Jensen, 194 Wis.2d 439, 459, 534 N.W.2d 361 (1995)). Thus, there is a quadruple-layer of protection in place for privilege-holders: a privilege-holder's consent to disclosure is required at two stages (prior to in camera review and after in camera review), the defendant must make the challenging Green showing before he is granted in camera review of privileged records, and the circuit court applies an even stricter standard to its in camera review of those records before determining whether any evidence should be disclosed to the defendant.
¶ 199. The existing procedure "strikes an appropriate balance between the defendant's due process right to be given a meaningful opportunity to present a complete defense and the policy interests underlying the Wis. Stat. § [905.04(2)] privilege." Id. First, fishing expeditions by the defense are prohibited. Green, 253 Wis. 2d 356, ¶ 33. Second, if the privilege holder does not wish to disclose the records, they will not be disclosed. See Shiffra, 175 Wis. 2d at 612. Third, should a circuit court conclude that a defendant makes a Green preliminary showing for an in camera review, and should the privilege-holder refuse to allow the court to conduct that review, a defendant's right to a *102 fair trial is safeguarded by barring the privilege-holder's testimony at trial. Id. After all, the defendant has by that time "demonstra! [ed] a reasonable likelihood that the [privilege-holder's] records contain relevant information necessary to a determination of guilt or innocence and. . . not merely cumulative to other evidence available to the defendant." Green, 253 Wis. 2d 356, ¶ 34 (emphases added). "Under the circumstances," preclusion of the privilege-holder's testimony is warranted as "the only method of protecting [the defendant's] right to a fair trial." Shiffra, 175 Wis. 2d at 612.
¶ 200. Regrettably, there are occasions when defendants are wrongfully accused of committing a sexual assault. In those instances, the alleged victim would be the most likely to refuse access to those records, particularly if exculpatory information exists within those records. Unfortunately, the lead opinion falls short of contemplating this scenario when it bars access to an alleged victim's privileged, privately-held records no matter the circumstances. Simply stated, the procedure outlined by the lead opinion forecloses any opportunity to rebut the allegations through the use of an alleged victim’s records, even when the defendant meets the high standard required by Green.[4]
*104 Is it so clear that this procedure is preferable to the one that has been in place for over two decades? I think not.
¶ 201. The Shiffra-Green framework provides a workable solution to a difficult problem. Perhaps suggesting its intrinsic equity, the framework forces every party involved — the defendant, the privilege-holder, *105 the State — to shoulder a burden of some kind. The defendant must meet the required evidentiary showings, is never allowed his own review of the records at issue prior to final disclosure, and may nevertheless lose access to the records if the privilege-holder does not consent to disclosure. The privilege-holder must choose between limited disclosure of privileged evidence which is reasonably likely to contain relevant, non-cumulative information necessary to a determination of the defendant's guilt or innocence and preclusion of her testimony at trial. Finally, the State faces the possibility that its prosecution will be "hampered by a witness who strives to maintain privacy." Behnke, 203 Wis. 2d at 55.
¶ 202. The State has lodged understandable complaints against the effect the Shiffra-Green framework has on the prosecution of its cases.
We ... acknowledge that the "costs" of the health care provider privileges are principally shifted to the State. In a few circumstances, the State may have to completely forgo a case when one of its witnesses refuses to turn over the information. Nonetheless, the Due Process Clause guarantees the defendant a right to a trial based on truth seeking which can only be accomplished by allowing him or her to present a complete defense. The Due Process Clause thus prevents the State from shifting the costs associated with the health care provider privileges to criminal defendants. ...
The State also complains about the practical effects of the Shiffra decision on its ability to prosecute a case. It believes that forcing the State to pressure its witness into releasing the information or forgoing this witness's testimony is not fair. The State asserts that it should not be forced to make its witness reveal private information. And a witness, most likely the *106 accuser, should not be forced to disclose private and personal information to have the defendant brought to justice.
These complaints, however, were addressed in Shiffra, and the remedy set out in that case is still valid. Before the defendant is allowed access to these records and the witness's privacy is sacrificed, and before the State is faced with the decision of whether it can forgo the witness and still make its case, the records must pass through a private and confidential review in the trial court's chambers. We have complete confidence in this state's trial judges to accurately and fairly balance the witness's right to privacy and the defendant's right to a trial where every piece of evidence material to determining the truth will be considered. The State overestimates the burden that Shiffra places on it and its witnesses.
Behnke, 203 Wis. 2d at 56-57 (citations omitted).
¶ 203. The Behnke court's discussion provides a window into the State's view of the matter. The State again asks this court to abandon the Shiffra-Green framework by overturning Shiffra or by modifying Shiffra's holding to allow for remedies other than preclusion of the privilege-holder's testimony. Certain of my colleagues would grant the State's request. I would not and will now discuss why the court should not now abandon the Shiffra-Green framework.
II. THIS COURT SHOULD NOT ABANDON THE SHIFFRA-GREEN FRAMEWORK.
A. This Court Should Not Overrule Shiffra.
¶ 204. The State and the lead opinion would upend over two decades of precedent by overruling Shiffra, despite the fact that this court has already *107 explicitly refused to do so. Green, 253 Wis. 2d 356, ¶ 21 n.4.[5] What has changed since Green1?: Nothing that has any bearing on the legal questions in this case. What should now cause us to uproot decades of precedent? Such unpredictability on the part of this court is inimical to the rule of law. Johnson Controls, 264 Wis. 2d 60, ¶ 94 ("[RJespect for prior decisions is fundamental to the rule of law."). When our law "is open to revision in every case, 'deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results.'" Id. (quoting Schultz v. Natwick, 2002 WI 125, ¶ 37, 257 Wis.2d 19, 653 N.W.2d 266)). Although often repeated, it is appropriate to again set out the important rationales for stare decisis:
[1] the desirability that the law furnish a clear guide for conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; [2] the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and [3] the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments.
Id., ¶ 95 (citation omitted). Stare decisis "promotes evenhanded, predictable, and consistent development of legal principles . . . and contributes to the actual and perceived integrity of the judicial process." Id. (citation omitted). Twice now in the past few years this court has wrestled with the problem at issue in this case and created confusion in the lower courts. Johnson, 348 Wis. 2d 450 (per curiam), reconsideration granted, 353 Wis. 2d 119 (per curiam). All the more reason to follow precedent today.
*108 ¶ 205. " [S]pecial justification is required to overturn prior decisions," and "[t]he reasons for rejecting any established rule of law must always be weighed against" the rationales underlying stare decisis. Johnson Controls, 264 Wis. 2d 60, ¶¶ 95—96. When considering overturning prior case law, this court may examine a series of concerns: (1) whether there have been "changes or developments in the law [which] have undermined the rationale behind a decision"; (2) whether there is "a need to make a decision correspond to newly ascertained facts"; (3) whether there has been "a showing that the precedent has become detrimental to coherence and consistency in the law"; (4) "whether the prior decision is unsound in principle"; (5) "whether [the prior decision] is unworkable in practice"; (6) "whether reliance interests are implicated"; (7) "whether the prior case was correctly decided"; and (8) "whether it has produced a settled body of law." Id., ¶¶ 98-99 (citations omitted).
¶ 206. Most, if not all, of these considerations counsel against overturning Shiffra and Green. But the State and the lead opinion share the same fundamental complaint with regard to the Shiffra-Green framework: they believe that Shiffra improperly interpreted and applied the case upon which it principally relied, Pennsylvania v. Ritchie, 480 U.S. 39 (1987). Shiffra, 175 Wis. 2d at 603. In Ritchie the Supreme Court relied on the Due Process Clause of the Fourteenth Amendment, Brady v. Maryland, 373 U.S. 83 (1963), and other case law for its conclusion that the trial court in that case was required to review in camera confidential records in the hands of a state protective service agency in order to determine
*109 whether the records contained information that "probably would have changed the outcome" of a criminal defendant's trial. Ritchie, 480 U.S. at 43, 57-58.
¶ 207. Specifically, the lead opinion argues that Shiffra represents an unwarranted application of Ritchie, because: (1) Shiffra involved privileged records, whereas Ritchie involved confidential records; (2) Wis. Stat. § 905.04(2) contains no exception allowing for release by court order, whereas the statute at issue in Ritchie did contain such an exception; and (3) the records in Shiffra were held by a private entity, whereas the records in Ritchie were held by a state protective service agency "charged with investigating cases of suspected mistreatment and neglect." Ritchie, 480 U.S. at 43. This last distinction is essentially echoed by the State.
¶ 208. Before turning to these objections, let us assume for a moment that the State and the lead opinion are correct that Shiffra was wrong to premise its holding on Ritchie.
Respecting stare decisis means sticking to some wrong decisions. The doctrine rests on the idea, as Justice Brandéis famously wrote, that it is usually "more important that the applicable rule of law be settled than that it be settled right." Indeed, stare decisis has consequence only to the extent it sustains incorrect decisions; correct judgments have no need for that principle to prop them up. Accordingly, an argument that we got something wrong — even a good argument to that effect — cannot by itself justify scrapping settled precedent. Or otherwise said, it is not alone sufficient that we would decide a case differently now than we did then. To reverse course, we require as well what we have termed a "special justification"- — -over and above the belief "that the precedent was wrongly decided."
*110 Kimble v. Marvel Entm't, LLC, 576 U.S. _, 135 S. Ct. 2401, 2409 (2015) (emphasis added) (citations omitted).[6] In 2002 the Green court understood that fact. Green, 253 Wis. 2d 356, ¶ 21 n.4 ("[T]his court [has] *111 recognized the validity of Shiffra in State v. Solberg, 211 Wis. 2d 372, 386-87, 564 N.W.2d 775 (1997), and in State v. Rizzo, 2002 WI 20, ¶ 53, 250 Wis. 2d 407, 640 N.W.2d 93. We will not depart from this precedent.").
¶ 209. Thus, although the State and the lead opinion have undeniably identified distinctions between Shiffra and Ritchie, the relevant question is whether these distinctions warrant upheaval of a "settled body of law."[7] Johnson Controls, 264 Wis. 2d 60, ¶ 99; see Daniel D. Blinka, The Shiffra Procedures: Production of a Witness's Privileged Health Care Records, 7 Wis. Prac., Wis. Evidence § 511.2 (discussing "the Shiffra doctrine"); see also Wisconsin District Attorneys Association, Wisconsin Prosecutor's Domestic Abuse Reference Book, ch. 13 (2d ed. 2012) ("Discovery of Medical Records of Victims and Witnesses: Shiffra-Green and Related Cases").
¶ 210. Turning to the merits of the objections raised: Was Shiffra "unsound in principle"? Johnson Controls, 264 Wis. 2d 60, ¶ 99. That is, was it wrong to extend the reasoning in Ritchie to privately-held records? Nationwide, the jury is still out on that question:
*112 Since the due process obligation of the prosecution under Brady extends only to evidence within its control, an issue left open in Ritchie is whether a subpoena .. . directed to a private party or an unrelated governmental agency carries similar constitutional protection. Many lower courts, in dealing with records similar to those involved in Ritchie, have ordered the same type of in camera review as required there without regard to whether the records were sought from a related state agency or a private hospital.
Wayne R. LaFave et al., 6 Criminal Procedure § 24.3(f) & n.207 (4th ed. 2015) (collecting cases); Burns v. State, 968 A.2d 1012, 1024-25 & n.41 (Del. 2009) (same). Additionally, at least one state court has allowed access to the type of information at issue on constitutional grounds unrelated to the Due Process Clause, which is why the lead opinion undertakes the Herculean task of negating any other constitutional basis for Shiffra in order to demonstrate that Shiffra is indeed "unsound in principle." See Commonwealth v. Barroso, 122 S.W.3d 554, 561 (Ky. 2003) ("[W]e conclude that the Compulsory Process Clause affords a criminal defendant the right to obtain and present exculpatory evidence, including impeachment evidence, in the possession of a third party that would otherwise be subject to the psychotherapist-patient privilege."). One might think that the unsettled nature of the question across the country would counsel restraint when considering upsetting the settled case law on the question in Wisconsin, pending further guidance from the Supreme Court on the issue. But the State and the lead opinion are confident that the Shiffra and Green courts got it so wrong that drastic action is needed.
*113 ¶ 211. The lead opinion's distinctions between Ritchie and Shiffra do not inescapably lead to the conclusion that Shiffra must be overruled. For example, the lead opinion makes much of the fact that the statute at issue in Ritchie contained an exception allowing an agency to disclose records at issue to a "court of competent jurisdiction pursuant to a court order." Ritchie, 480 U.S. at 44. It is true that Wis. Stat. § 905.04 does not contain such an exception. But neither is the statute one that grants a private party "the absolute authority to shield its files from all eyes." Ritchie, 480 U.S. at 57. In fact, Wis. Stat. § 905.04 currently contains about 11 exceptions. Wis. Stat. § 905.04(4) ("Exceptions").[8] The state statute which the Ritchie court cited as an example of an "unqualified statutory privilege" contained no exceptions. Ritchie, 480 U.S. at 57 (citing 42 Pa. Cons. Stat. § 5945.1(b)).
¶ 212. In a footnote, the Ritchie court "express [ed] no opinion on whether the result in this case would have been different if the statute had protected the [protective service agency's] files from disclosure to anyone, including law-enforcement and judicial personnel." Ritchie, 480 U.S. at 57 n.14. Wisconsin Stat. § 905.04 allows disclosure to both law-enforcement and judicial personnel. See, e.g. Wis. Stat. § 905.04(4)(d) ("There is no privilege in trials for homicide when the disclosure relates directly to the facts or immediate circumstances of the homicide."); Wis. Stat. § 905.04(4)(e)2m. ("There is no privilege for information contained in a report of child abuse or neglect that is provided under s. 48.981(3)."). And even *114 if the statute did not allow such disclosure, the Ritchie court "express [ed] no opinion" on the potential distinction. Ritchie, 480 U.S. at 57 n.14. This hardly supports a conclusion that Shiffra was "unsound in principle" in extending Ritchie's principles to the facts at issue in that case.[9]
¶ 213. Second, the lead opinion's confidentiality-vs.-privilege distinction is not one that was emphasized by the Ritchie court. And it is far from clear that the Ritchie court's analysis would have been any different had the statute at issue been a privilege statute. See, e.g., Ritchie, 480 U.S. at 43 ("[The protective service agency] refused to comply with the subpoena, claiming that the records were privileged under Pennsylvania law."); id. at 52 (plurality opinion) (stating that a statute in a prior case rendered information presumptively confidential, then referring to that statute as creating a statutory privilege); id. at 57 ("The Commonwealth, however, argues that no materiality inquiry is required, because a statute renders the contents of the file privileged."). And indeed, we are not the only jurisdiction that has failed to give the distinction dispositive weight. Burns, 968 A.2d at 1024. The lead opinion's purported distinction does not rise to the level of a "special justification" warranting the elimination of 20 years of Wisconsin case law.
*115 ¶ 214. Finally, reading the lead opinion, one almost comes away with the conclusion that Shiffra relied directly on Brady rather than on Ritchie.[10] Nowhere does the Ritchie court state, as the lead opinion hesitantly admits, that the fact that the protective service agency in that case was tasked with investigating "cases of suspected [child] mistreatment and neglect" thereby made it an arm of the prosecution. Indeed, the Supreme Court cases cited by the lead opinion for its reasoning on this point were not published until years after Ritchie, and thus were not in the contemplation of the Ritchie court. The lead opinion's interpretation of Ritchie may "make[] sense" in retrospect, but it does not banish all doubt that the Ritchie court might have had broader principles in mind at the time it decided its opinion.
¶ 215. To be sure, Ritchie relied on principles taken from Brady. Ritchie, 480 U.S. at 57; see District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 61 (2009) ("The Court of Appeals affirmed, relying on the prosecutorial duty to disclose exculpatory evidence recognized in Pennsylvania v. Ritchie, 480 U.S. 39 (1987), and Brady v. Maryland, 373 U.S. 83 (1963)."). But it is not evident that that necessarily forecloses application of Ritchie to a broader set of circumstances. See, e.g., Burns, 968 A.2d at 1024-25 ("Although Ritchie involved the disclosure of records in the possession of the State, nothing in the Ritchie *116 Court's holding or analysis limits its application to records held by the State. . . . From the standpoint of the privilege holder it is immaterial whether the holder's therapy records are in the possession of a private party or the State. In either circumstance, the privilege holder has the identical interest in nondisclosure."); cf. State v. Cressey, 628 A.2d 696, 703 (N.H. 1993) (citing State v. Gagne, 612 A.2d 899 (N.H. 1992)) {"Gagne did not distinguish between the privileged records of a State agency and the privileged records of a private organization. The rationale in Gagne, balancing the rights of a criminal defendant against the interests and benefits of confidentiality, applies equally in both cases. A record is no less privileged simply because it belongs to a State agency. Likewise, a defendant's rights are no less worthy of protection simply because he seeks information maintained by a non-public entity.").
¶ 216. Our court of appeals — in one of the numerous cases the lead opinion would abrogate today— has rejected the notion that Ritchie and Shiffra are about "keeping a level playing field between the State and the defendant." Behnke, 203 Wis. 2d at 55-56. Instead, "these decisions attempt to strike a balance between the witness's right to privacy, which is embodied in the health care provider privileges, and the truth-seeking function of our courts, which is rooted in the Due Process Clause of the Fourteenth Amendment." Id. Although the lead opinion reads Ritchie as a more-or-less clear-cut application of Brady, I am not convinced that this is the only reasonable reading of the Ritchie court's brief and enigmatic analysis, such that Shiffra must be overruled. See Ritchie, 480 U.S. at *117 57-58.[11] The question is less about which position is correct, and more about whether the mere possibility of error justifies such a monumental shift in Wisconsin law. See Johnson Controls, 264 Wis. 2d 60, ¶¶ 94-96.
B. This Court Should Not Modify Shiffra.
¶ 217. If Shiffra is not overturned, the State asks this court to modify Shiffra to allow for alternative remedies when a defendant makes the showing required by Green and the privilege-holder refuses to allow the circuit court to conduct an in camera review of the privilege-holder's records. Certain of the justices on this court agree with the State's suggestion. I am not yet convinced that we should modify Shiffra.
¶ 218. To be clear, when the Shiffra court stated that "[u]nder the circumstances, the only method of protecting Shiffra's right to a fair trial was to suppress [the privilege-holder's] testimony if she refused to disclose her records," it meant that no other method is available in these types of cases — "[i]n this situation, *118 no other sanction would be appropriate." Shiffra, 175 Wis. 2d at 612.[12] As a preliminary matter, the discussion in Shiffra thus essentially disposes of the State's arguments that there are other remedies available, namely: (1) use of an exception in a statute not at issue, Wis. Stat. § 146.82(2)(a)4., to compel production of privileged records; and (2) use of a case-by-case balancing test to determine whether a privilege- *119 holder should be allowed to testify even after refusing to disclose privileged records.
¶ 219. More specifically, the State's first proposed solution is plainly nothing more than wishful thinking. The State would bypass the privilege-holder's refusal to allow in camera review — as is the privilege-holder's right under Wis. Stat. § 905.04(2) — by using an exception to Wis. Stat. § 146.82, "Confidentiality of patient health care records." Section 146.82(2)(a)4. allows access to patient healthcare records rendered confidential by that statute "without informed consent" pursuant to "a lawful order of a court of record." § 146.82(2)(a)4.
¶ 220. It would seem to go without saying that an exception in one statute ordinarily does not operate as an exception in another statute. Wisconsin Stat. § 146.82 currently contains almost two dozen exceptions. Wis. Stat. § 146.82(2). Should all of them operate as exceptions to Wis. Stat. § 905.04(2)? Such an outcome could only be achieved by legislating words into the statutory text.
¶ 221. The fact that Wis. Stat. § 905.04(2) and Wis. Stat. § 146.82 may be in pari materia does not alter the analysis. "[Statutes which are in pari mate-ria are to be read together and harmonized where that is possible." State v. Walker, 75 Wis. 2d 93, 102, 248 N.W.2d 410 (1977) (citation omitted); see also In pari materia, Black's Law Dictionary 911 (10th ed. 2014) ("It is a canon of construction that statutes that are in pari materia may be construed together, so that inconsistencies in one statute may be resolved by looking at another statute on the same subject."). But there is nothing to harmonize here; the two statutes are consistent with each other. There might be legitimate reasons for the existence of a judicial-order exception *120 in one statute but not the other. See, e.g., State v. Denis L. R., 2005 WI 110, ¶ 57 n.21, 283 Wis. 2d 358, 699 N.W.2d 154 (Wis. Stat. § 905.04 and Wis. Stat. § 146.82 "must be read together in pari materia to avoid any conflicts" (emphasis added).). Further, there is no ambiguity to resolve in Wis. Stat. § 905.04(2) for purposes of this case that would require reference to Wis. Stat. § 146.82; Wisconsin Stat. § 905.04(2) is clear in its effect. We cannot ignore the plain language of the privilege statute and create an exception where none exists simply to reach a desired result. That is why, under the Shiffra-Green framework, if the privilege-holder does not consent to review of her records, those records are not reviewed — even if a defendant makes a Green showing.[13]
¶ 222. The State's second proposed remedy is for courts to "balance," in each individual case, "the *121 defendant's constitutional rights against the witness's right to privacy in her privileged records" and against the State's interests. Put differently, the State argues that after a defendant makes a Green showing and the privilege-holder refuses to consent to review of her records, courts should conduct a balancing analysis in order to determine whether the privilege-holder may nonetheless testify. The problem with this suggestion is that this balancing is already built into the Shiffra-Green framework. To be clear, the defendant is not entitled to a fishing expedition of the alleged victim's privileged records. In each case, in order to establish any claim to privileged records, a defendant must "set forth, in good faith, a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and. . . not merely cumulative to other evidence available to the defendant." Green, 253 Wis. 2d 356, ¶ 34. The interests of a defendant who has made this showing are weightier than the interests of a defendant who has not made this showing, and sufficiently weighty to require preclusion of a privilege-holder's testimony, should the privilege-holder not consent to release of the records. Further weighing is unnecessary and inappropriate. See Shiffra, 175 Wis. 2d at 608-09 (analogizing the defendant's initial burden to "cases in which a defendant seeks disclosure of a government informant's identity," and stating, "[b]oth situations require us to balance the defendant's constitutional right to a fair trial against the state's interest in protecting its citizens by upholding a statutorily created privilege.").
¶ 223. From all that has already been said, it is easy to see why neither of the State's proposals provide an adequate remedy. The first solution ignores the *122 privilege-holder's statutory right. The second solution ignores the defendant's constitutional right. Both thus upset the careful balance struck by Shiffra and Green. See Solberg, 211 Wis. 2d at 387.
III. THE DISPOSITION OF THIS CASE
¶ 224. The amalgam of opinions in this case is potentially confusing. In Johnson, 348 Wis. 2d 450 (per curiam), reconsideration granted, 353 Wis. 2d 119 (per curiam), a similar jumble of opinions required this court to grant a motion for reconsideration to clarify its earlier opinion. See id. Therefore, before I conclude, I wish to discuss briefly the disposition of this case in order to provide guidance to the litigants below so that the parties need not file, as they did in Johnson, a motion in order to obtain clarification of the effect of the court's decision. Simply stated, the parties in this case are in the same position as the parties in Johnson: the decision of the court of appeals remains the law of the case.
¶ 225. More specifically, Justice Gableman, Chief Justice Roggensack, and Justice Rebecca Bradley would overrule Shiffra and Green and reverse the decision of the court of appeals. But, because these three justices do not command a majority of the court, Shiffra and Green are not overruled.
¶ 226. Justice Ann Walsh Bradley and Justice Abrahamson would modify the Shiffra-Green framework and reverse the decision of the court of appeals. But because these two justices do not command a majority of the court, the Shiffra-Green framework is not modified.[14]
*123 ¶ 227. Although these five justices would all reverse the decision of the court of appeals, no majority agrees on a rationale for doing so. As no precedent is changed by the opinions of these five justices, reversal of the court of appeals would run contrary to existing precedent, namely Shiffra and Green. See Johnson, 353 Wis. 2d 119, ¶ 5 (per curiam) ("The prior per curiam was incorrect to convey that a majority could be reached by separating whether the medical records must be produced from whether the *124 victim may testify because such a separation would produce new criteria that a majority of the court has not authorized.").
¶ 228. Finally, Justice Prosser and I would today reaffirm Shiffra, Green, and the Shiffra-Green framework and would affirm the decision of the court of appeals. But as two justices, we do not command a majority of the court.
¶ 229. Nevertheless, "no [four] justices reach agreement to either affirm, reverse, or modify the decision of the court of appeals consistent with precedent. Consequently, the court of appeals decision remains the law of the case." Johnson, 353 Wis. 2d 119, ¶ 2 (per curiam). In other words, the law in Wisconsin remains as it was before the appeal to this court occurred. This case should not be read to overturn or modify any existing law, including Shiffra and Green.[15]
IV. CONCLUSION
¶ 230. We should tread lightly in this complex area of the law, upsetting precedent only when compelled to do so by some "special justification." This court, myself included, can and does overrule precedent when appropriate. Ultimately, however, it is simply not evident that Shiffra is so unsound in principle as to require this court to overturn it and its progeny. The lead opinion wanders far beyond the confines of the briefing and argument in this case, discarding the Shiffra-Green framework despite incomplete knowledge of the many applicable constitu *125 tional considerations. The potential for error here (the same type of error which the State and lead opinion allege occurred in Shiffra) is substantial. The fractured nature of today's opinion, and of the opinion in Johnson, 348 Wis. 2d 450 (per curiam), demonstrate, at the very least, the doubtfulness of whether Shiffra is in fact so incoherent as to justify its rejection. When there is this much turmoil regarding the vitality or not of a line of cases, it may well be advisable to err on the side of caution. Johnson Controls, 264 Wis. 2d 60, ¶ 94 ("A court's decision to depart from precedent is not to be made casually. It must be explained carefully and fully to insure that the court is not acting in an arbitrary or capricious manner. A court should not depart from precedent without sufficient justification."). "Circuit courts and counsel have functioned well using the Shiffra/Green analysis for many years . . . ." Johnson, 353 Wis. 2d 119, ¶ 12 (per curiam).
¶' 231. This court is more than simply the sum of its current members. It is an institution that endures long after any one individual justice leaves the bench. The public needs certainty — a stable rule of law — not what amounts to a collection of several law review articles by the members of this court. The lead opinion may, in time, be proven correct by the Supreme Court of the United States. Or, this court may be compelled to revisit the Shiffra doctrine on the basis of future developments in related case law. But the State and the lead opinion have not today provided the "special justification" required to decide that we were wrong, in Green, to hew to the Shiffra line of cases. Green, 253 Wis. 2d 356, f 21 n.4.
*126 ¶ 232. I conclude that this court should not abandon the Shiffra-Green framework and would therefore affirm the decision of the court of appeals.[16]
¶ 233. For the foregoing reasons, I respectfully dissent.

 The Honorable Andrew P. Bissonnette presided.

 "Let justice be done, though the heavens fall."

 Of course, if any information is released, the court still retains "reasonable control over the mode and order of interrogating witnesses and presenting evidence" at trial. Wis. Stat. § 906.11. The court has the duty to exercise this control in order to "[m]ake the interrogation and presentation effective for the ascertainment of the truth [;] [a] void needless consumption of time[; and] [p]rotect witnesses from harassment or undue embarrassment." Id.

 In cases such as this one where the defendant has met the significant hurdles established in the Green standard and the privilege-holder refuses to consent to in camera review, the lead opinion has nonetheless concluded that otherwise accessible, potentially exculpatory evidence has constitutionally been placed outside of the reach of the defendant. The lead opinion dismisses our concern over the potential violation of the defendant's constitutional rights, tacitly characterizing it as an emotional appeal. If the constitutional right to present a defense has emotional appeal, it is because I feel strongly that our constitutional rights ought to be protected. The lead *103 opinion's assurances that somehow the criminal justice system otherwise prevents wrongful convictions, in the absence of the Shiffra-Green framework, ring hollow.
The lead opinion concludes that meaningful constitutional protections are afforded to a defendant, because a defendant has certain general safeguards, such as a presumption of innocence and the right to an adversarial process. The lead opinion concludes that these protections alone avert erroneous convictions, but these protections alone do not directly address the need for a defendant to access privileged, privately-held records in order, for example, to present a meaningful defense or adequately cross-examine — fundamental to the adversarial process. True, the presumption of innocence is a safeguard, in the same way that providing defendants with a trial in the first place is a safeguard: necessary, important, but ultimately not germane to the specific concern in these types of cases: a privilege-holder's refusal to consent to in camera review of privileged, privately-held records reasonably likely to contain relevant information necessary to a determination of the defendant's guilt or innocence and not merely cumulative to other evidence available to the defendant. State v. Green, 2002 WI 68, ¶ 19, 253 Wis. 2d 356, 646 N.W.2d 298
The lead opinion urges trust in our adversary legal system, but our "adversary legal system. . . depends upon the availability of relevant evidence," Nixon v. Administrator of General Services, 433 U.S. 425, 477 (1977), to say nothing of the availability of "information necessary to a determination of guilt or innocence and. . . not merely cumulative to other evidence available to the defendant." Green, 253 Wis. 2d 356, ¶ 34. I acknowledge the grave importance of ensuring the privacy of the records at issue in this case. At the same time, when evidence potentially so relevant to the question of a defendant's guilt is placed out of the defendant's reach, there is legitimate cause for concern. We do expect juries to reach valid results, but they are unable to do so when they are only presented with the evidence favorable to one side of a prosecution. This is what causes individuals to lose, not gain, faith in the criminal justice system.
Additionally, the lead opinion explains that because in cases such as the current one the prosecution does not have *104 access to a complainant's privileged mental health care records either, defendants are not placed in a disadvantageous position vis-a-vis the State. But Wisconsin case law has already addressed this argument:
In those situations when the State does not have access to the records because the witness has asserted a health care provider privilege,. . . the State believes that the requirement for an in camera review set out in Ritchie should not apply. .. . [The State] sees no potential unfairness in such situations because neither the State nor the defendant can use the records. The playing field is kept completely level.
The State, however, misconstrues the reasoning of Ritchie and Shiffra. These decisions are not about keeping a level playing field between the State and the defendant. Rather, these decisions attempt to strike a balance between the witness's right to privacy, which is embodied in the health care provider privileges, and the truth-seeking function of our courts, which is rooted in the Due Process Clause of the Fourteenth Amendment.
State v. Behnke, 203 Wis. 2d 43, 55-56, 553 N.W.2d 265 (Ct. App. 1996) (citation omitted).
Finally, the lead opinion refers to the State's obligation under Brady v. Maryland, 373 U.S. 83 (1963), and to the possibility that future legislative or judicial developments will provide a new justification for use of the Shiffra-Green framework. Again, these considerations do not address the pressing concern in this case: a privilege-holder's refusal to consent to in camera review of currently-privileged, privately-held records reasonably likely to contain relevant information necessary to a determination of the defendant's guilt or innocence and not merely cumulative to other evidence available to the defendant. Green, 253 Wis. 2d 356, ¶ 19.

 To put the time period during which Wisconsin courts have relied on Shiffra in perspective, I note that Shiffra was decided the same year as Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

 The lead opinion's suggestion that this statement of law is inapplicable in a constitutional case is not correct. In the section of Kimble v. Marvel Entertainment, LLC, 576 U.S. _, 135 S. Ct. 2401 (2015), cited above, the Supreme Court discussed stare decisis in general terms and in fact cited Payne v. Tennessee, 501 U.S. 808, 827—28 (1991), a constitutional case, in the first paragraph of that section. Kimble, 135 S. Ct. at 2409. The Court also discussed stare decisis in the context of decisions interpreting statutes. This latter discussion is the one quoted by the lead opinion. See id.
For example, in Dickerson v. United States, the Supreme Court considered legislation bearing on Miranda v. Arizona, 384 U.S. 436 (1966), and considered whether it should overrule that case. Dickerson, 530 U.S. 428, 431-32 (2000). The Court concluded: "We hold that Miranda, being a constitutional decision of this Court, may not be in effect overruled by an Act of Congress, and we decline to overrule Miranda ourselves." Id. at 432. A portion of the Dickerson Court's discussion of stare decisis is informative for purposes of this case:
Whether or not we would agree with Miranda's reasoning and its resulting rule, were we addressing the issue in the first instance, the principles of stare decisis weigh heavily against overruling it now. See, e.g., Rhode Island v. Innis, 446 U.S. 291, 304, 100 S. Ct. 1682, 64 L.Ed.2d 297 (1980) (Burger, C.J., concurring in judgment) ("The meaning of Miranda has become reasonably clear and law enforcement practices have adjusted to its strictures; I would neither overrule Miranda, disparage it, nor extend it at this late date."). While " 'stare decisis is not an inexorable command,1" particularly when we are interpreting the Constitution, "even in constitutional cases, the doctrine carries such persuasive force that u>e have always required a departure from precedent to be supported by some 'special justification.'"
We do not think there is such justification for overruling Miranda.
Id. at 443 (some citations omitted) (emphasis added).
*111 Shiffra-Green has striking similarities to the development of Miranda. Both developed out of underlying constitutional principles rather than the words of the constitution itself. Given the above precedent, consider the words "Shiffra-Green" in place of "Miranda" in the above quotation to analyze whether stare decisis applies in the case at issue.

 For instance, the Shiffra court itself recognized that it was using Ritchie's postconviction analysis in a pretrial context, and thus already was not simply engaged in a straightforward application of that case. See State v. Shiffra, 175 Wis. 2d 600, 606-09, 499 N.W.2d 719 (Ct. App. 1993).

 Coincidentally, the statute at issue in Ritchie also contained 11 exceptions. Pennsylvania v. Ritchie, 480 U.S. 39, 43 (1987).

 It bears repeating here that Shiffra and Green do not create a statutory exception to a privilege where one does not exist. The cases do not create blanket authorization for in camera review of privileged materials. Instead, should the proper showing be made, and should a privilege-holder refuse to consent to in camera review, the privilege-holder is barred from testimony at trial and her privilege remains intact. See Shiffra, 175 Wis. 2d at 612.

 In fact, during the Ritchie court's discussion of whether the criminal defendant in that case was "entitled to have the [protective service agency] file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial," the court cited Brady exactly one time. Ritchie, 480 U.S. at 57.

 Other jurisdictions appear to be in accord with Wisconsin's current approach. See Clifford F. Fishman, Defense Access to a Prosecution Witness's Psychotherapy or Counseling Records, 86 Or. L. Rev. 1, 18 (2007) ("Where a defendant has established a constitutional right to the disclosure of privileged information, but the statutory privilege is absolute on its face, some courts have held that the witness retains the privilege: a court cannot disclose unless the witness waives the privilege. Absent such a waiver, if the defendant adequately demonstrates the need for an in camera review or disclosure of the records, the witness is precluded from testifying. If he or she has already testified, his or her testimony is stricken from the record. States following this approach include Connecticut, Michigan, Nebraska, New Mexico, Wisconsin, and South Dakota" (footnotes omitted) (citations omitted).).

 The court of appeals below correctly explained:
[W]e agree with the circuit court that we are bound by plain language in Shiffra that forecloses alternative remedies.
[[Image here]]
Shiffra's use of "In this situation" and "Under the circumstances," read in context, is plainly a reference to the "situation" or "circumstance" in which a defendant makes the required showing and the victim refuses to authorize release of the records for an in camera review. There is nothing in Shiffra suggesting that the use of this language was meant to restrict the holding to some unspecified subset of situations or circumstances in which a defendant makes the required showing and the victim refuses to release records.
State v. Lynch, 2015 WI App 2, ¶¶ 42-43, 359 Wis. 2d 482, 859 N.W.2d 125.
I recognize that Shiffra's author has voiced, in an unpublished dissent, his disagreement with this interpretation of Shiffra. State v. Johnson, No. 2011AP2864-CRAC, unpublished slip op., ¶ 24 (Wis. Ct. App. Apr. 18, 2012), aff'g as modified by 2013 WI 59, 348 Wis. 2d 450, 832 N.W.2d 609. Ignoring other problems with reliance on this type of post-decision "judicial history," I note that two other judges joined the Shiffra opinion and may have had a different view of the case. I also note that both the majority in the unpublished Johnson case and the court of appeals below disagree with the Johnson dissent's reading of Shiffra. See Johnson, unpublished slip op., ¶¶ 16-18; Lynch, 359 Wis. 2d 482, ¶¶ 42-43.1 agree with these five judges that Shiffra's language does not admit of any alternative remedies.

 At one point in its brief the State characterizes use of Wis. Stat. § 146.82(2)(a)4. as a "graft[ing]" of a "constitutional exception" to Wis. Stat. § 905.04. The State seems to be arguing that § 905.04 would be unconstitutional as applied in certain cases because it does not contain an exception allowing the defendant access to privileged records.
One of the benefits of the Shiffra-Green framework is that it alleviates concerns about the protection of the defendant's constitutional rights without requiring consideration of the potential invalidation of Wis. Stat. § 905.04. Cf. Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 328-29 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. . . . [W]e try not to nullify more of a legislature's work than is necessary, for we know that '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people'" (citation omitted).); Shelby County, Ala. v. Holder, 570 U.S. __, 133 S. Ct. 2612, 2631 (2013) ("Striking down an Act of Congress 'is the gravest and most delicate duty that this Court is called on to perform' " (citation omitted).).

 To be clear, adhering to Shiffra and Green means adhering to the single remedy established in that line of *123 cases: preclusion of the privilege-holder's testimony under the circumstances specified in those cases. As we made clear in our opinion granting the motion for reconsideration in Johnson, the privilege-holder's "decision to produce and the consequence of whether testimony is allowed cannot be separated." State v. Johnson, 2014 WI 16, ¶ 5, 353 Wis. 2d 119, 846 N.W.2d 1 (per curiam). By permitting additional remedies, Justice Ann Walsh Bradley and Justice Abrahamson would, like the members of the lead opinion, overrule Shiffra (albeit on grounds separate from those relied upon by the members of the lead opinion) and reverse the decision of the court of appeals below.
Although Justice Ann Walsh Bradley and Justice Abrahamson agree with the court of appeals that Lynch made the Green showing entitling him to in camera review of the complainant's privileged mental health records, that part of the decision of the court of appeals is not disputed, is not currently before this court, and is not analyzed in the lead opinion. Instead, this court is addressing whether the Shiffra-Green framework should be overruled.
The court of appeals below applied the Shiffra-Green framework as established in our case law, including the single remedy provided for under that framework. See Lynch, 359 Wis. 2d 482, ¶¶ 39, 42. Justice Ann Walsh Bradley and Justice Abrahamson would depart from that court's straightforward application of Shiffra and Green. Thus, regardless of their own descriptions of their opinion, Justice Ann Walsh Bradley and Justice Abrahamson would simply reverse the decision of the court of appeals.

 Hence, although I write in dissent, I dissent from the lead opinion; I agree with the functional outcome of this case.

 The parties do not dispute whether the circuit court and the court of appeals were correct in concluding that Lynch met the Green showing for in camera review of the files at issue. Without briefing, I do not address the question. However, I emphasize again that the Green showing is not meant to be perfunctory. See Green, 253 Wis. 2d 356, ¶¶ 33—35.